IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Brookhaven  :
:
    v.  : No. 761 C.D. 2022
:
Maria Carman and Bohdan Carman  :
:
Appeal of: George John Carman  : Submitted: April 6, 2023

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE ELLEN CEISLER, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                                    FILED: July 13, 2023

      Appellant George John Carman (George Carman) appeals from the Court of Common Pleas of Delaware County's (Common Pleas) April 18, 2022 order (Order), through which Common Pleas denied George Carman's Petition to Intervene *Nunc Pro Tunc* (Petition to Intervene). After thorough review, we vacate Common Pleas' Order and remand this matter for proceedings consistent with this opinion.

## I. Background

      On September 17, 2019, Appellee Borough of Brookhaven (Borough), acting pursuant to the Abandoned and Blighted Property Conservatorship Act (Blight Act),[1] filed a Petition to Appoint a Conservator (Conservatorship Petition) regarding a property located at 4209-4213 Edgmont Avenue in the Borough (Carman Property), on the professed basis that the Carman Property had not been properly maintained and had become blighted as a result. Reproduced Record (R.R.) at 1a-47a. Therein,

---

[1] Act of November 26, 2008, P.L. 1672, *as amended*, 68 P.S. §§ 1101-1111.

the Borough claimed that the Carman Property was owned by Maria Carman and Bohdan Carman.[2] *Id.* at 5a. Among other items, the Conservatorship Petition contains a deed, dated April 6, 1990, which conveyed a property from "Simon Carman and Maria Carman, his wife[;] Bohdan Carman[;] and George Carman" to Maria and Bohdan. *See id.* at 15a-21a. Maria and Simon were married, but are now deceased. *See* R.R. at 15a; Common Pleas Order, 4/18/22, at 7-8. Bohdan and George are their sons. *See* R.R. at 15a.

This deed does not offer an address for the property to which it relates, but contains the following description of that property's metes and bounds, as well as of its ownership history:

> ALL THAT CERTAIN parcel of ground, SITUATE in the Borough . . . , County of Delaware and Commonwealth of Pennsylvania, described according to a Plan of property of Simon Carman, prepared by G.D. Houtman & Son, Civil Engineers and Land Surveyors, dated December 8th, 1960, and last revised August 10th, 1978, as follows, to wit:
>
> BEGINNING at a point in the title line at or near the center line of Brookhaven Road (Thirty-three feet wide) the said point being Two Hundred Sixty-Five and Thirty-One hundredths feet North Forty-four degrees Thirty-nine minutes Forty seconds East from the point of intersection of the center line of Brookhaven Road with the centerline of Edgemont Avenue; thence from the said point of beginning and along the title line at or near the centerline of Brookhaven Road North Forty-four degrees Thirty-nine minutes Forty seconds East Seventy and Seventy-eight One-hundredths feet to a point; thence leaving Brookhaven Road and along Lot No. 2 South Forty-three degrees Thirty-seven minutes Forty-four seconds East

---

[2] Bohdan and Maria Carman neglected to file a brief in this matter, in contravention of the briefing schedule, as well as of this Court's February 1, 2023 order that directed them to correct this oversight no later than February 15, 2023. As a consequence, we precluded them from doing so on March 21, 2023.

Three Hundred Fifty-one and Eighty-three One-hundredths feet to a point; thence South Fifty-two degrees Thirty-five minutes Forty seconds West Fifty-four and Eighty One-hundredths feet to a pipe; thence North Forty-six degrees Twenty minutes Twenty seconds West Three Hundred Forty-four and Sixteen One-hundredths feet to the first mentioned point and place of beginning.

BEING FOLIO NO.: 05-00-00099-01

BEING the same premises which James E. Cooke and Christine Carman, by deed dated January 2, 1981[,] and recorded in Delaware County in the Office for the Recording of Deeds, in Deed Book #2769 page 295 &c., granted and conveyed unto Simon Carman, Maria Carman, Bohdan Carman[,] and George Carman, as joint tenants with the right of survivorship, in fee.

AND the said George Carman is also known as George John Carman.

*See id.* at 16a. Also attached thereto is a title search report, dated August 16, 2019.

*Id.* at 22a. This report includes the following relevant information:

**Property Owned By:** Simon Carman and Maria Carman, his wife; George John Carman; and Bohdan Carman

**Description:** 4209-4213 Edgemont Avenue, . . . Borough, Delaware County, PA

**Date of Deed:** 7/11/1975          **Recorded:** 1/12/1976

**Grantor:** Simon Carman and Maria Carman, his wife

**Book:** 2558          **Page:** 991

. . . .

**Parcel Number:** 05-00-00377-00

. . . .

**Notes:** Plan of Edgmont Villas, recorded in book 398 page 624

**Chain of Title:** Simon Carman and Maria Carman, his wife[,] and Bohdan Carman[,] to Simon Carman and Maria Carman, his wife, recorded 12/19/1975 in book 2557 page 452 for $1.00.[]

3

George Hionis and Irene Hionis, his wife[,] to Simon Carman and Maria Carman, his wife, recorded 6/20/1974 in book 2506 page 344 for $1.00.

Robert A. Platt, widower[,] to George Hionis and Irene Hionis, his wife, recorded 1/14/1971 in book 2389 page 984 for $35,000.00.

Robert A. Platt[,] also known as Robert Ammon Platt, and Cecilia R. Platt, his wife[,] to Robert A. Platt and Cecilia R. Platt, his wife, recorded 5/19/1958 in book 1905 page 526 [f]or $1.00.

**Cover Date:** 4/24/1958 to 7/15/2019

*Id.* at 22a (emphasis added). The attached deed's folio/parcel number, as well as its book and page numbers, do not match those contained in the title report for the Carman Property. *Compare id.*, *with id.* at 16a. Thus, the attached deed does not pertain to the Carman Property, but rather to another, entirely separate parcel of land. However, the title report establishes that, as of July 15, 2019, the Carman Property was jointly owned by all of the Carmans. *See id.* at 15a-22a. Despite this clear discrepancy, the Borough subsequently served Maria and Bohdan with the Conservatorship Petition and posted notices at the Carman Property, but did not serve George or Simon. *See* Common Pleas Order, 4/18/22, at 2, n.3.

Common Pleas then held a hearing on October 9, 2019, and, acting that same day, issued an order through which it both granted the Conservatorship Petition and appointed Bastogne Development Partners, LLC (Bastogne) as the Property's conservator. R.R. at 59a-60a. On November 12, 2019, Common Pleas approved Bastogne's blight abatement plan for the Carman Property. *Id.* at 68a. Thereafter, on February 12, 2020, Bastogne filed an additional motion, through which it requested that Common Pleas permit it to list the Carman Property for sale through a private real estate broker (Sale Motion). *Id.* at 69a-91a. Common Pleas then held a second hearing on March 2, 2020, at which Bohdan Carman appeared *pro se* in opposition

4

to the Sale Motion. *Id.* at 95a. On May 8, 2020, Common Pleas granted the Sale Motion. *Id.* at 93a-100a. Bastogne subsequently sold the Carman Property and, on October 23, 2020, Common Pleas granted Bastogne's Motion to Terminate Conservatorship. *See id.* at 102a-117a. The matter was then administratively marked as closed. *See* Common Pleas Order, 4/18/22, at 1.

Nearly a year later, George Carman filed his Petition to Intervene. Therein, he claimed that the deed that the Borough had included with its Conservatorship Petition was for a different property and that the Carman Property had, in actuality, been jointly owned by him, along with his parents Maria and Simon and brother Bohdan, without interruption, starting in 1975. *See* R.R. at 122a-23a, 132a-35a. In support of this claim, George Carman provided a property deed, dated July 11, 1975, which memorialized the transfer on that date of a property from "Simon Carman and Maria Carman, his wife" to Bohdan, George, Maria, and Simon. *See id.* at 132a. Additionally, this deed contains the following metes-and-bounds description and ownership history:

> ALL THOSE TWO CERTAIN lots or pieces of land with the buildings and improvements thereon erected, SITUATE in the Borough . . . , County of Delaware and State [sic] of Pennsylvania; and designated as Lots Nos. 13 and 14, in Block "A," on Plan of Edgmont Villas, as recorded in the Office for the Recording of Deeds in and for the County of Delaware, State [sic] of Pennsylvania, in Deed Book No. 398 page 624, and bounded and described as follows:

> BEGINNING at a point on the Northeasterly side of Edgmont Avenue Northwestwardly from Ridge Boulevard, CONTAINING in front measured Northwestwardly along Edgmont Avenue 40 feet and extending in length or depth Northeastwardly between parallel lines at right angles to said Edgmont Avenue 110 feet to lands now or late of Charles McCall and on the Southeast by lands now or late of Jennie DeAugustire.

> ALSO ALL THAT CERTAIN lot or piece of land SITUATE in the Borough . . . , County of Delaware and State [sic] of Pennsylvania; and designated as Lots 10, 11, and 12, in Block "A," Edgmont Villas, as recorded in Deed Book No. 398 page 624. Being at a point on the Northwest side of Edgmont Avenue Northwest from Ridge Boulevard, a corner of lands of Delaware County Trust Company.
>
> CONTAINING in front along the Northeast side of Edgmont Avenue Northwest 60 feet and extending in depth Northeast between parallel lines 110 feet to lands now or late of Conrad Matern, et al. Bounded on the Northwest by lands of Morris Schwartz.
>
> BEING the same premises which Simon Carman and Maria Carman, his wife, and Bohdan Carman, by Deed date July __, 1975[,] and intended to be forthwith recorded in Delaware County, conveyed until Simon Carman and Maria Carman, his wife.

*Id.* at 132a-33a. This description is entirely different than the one contained in the deed attached to the Conservatorship Petition. *Compare id.*, with *id.* at 16a. Furthermore, although this deed does not offer an address for the property to which it pertains, the information contained therein matches the description of the Carman Property provided in the Conservatorship Petition's title report. Compare *id.* at 22a, *with id.* at 132a-33a. George Carman alleged that the Borough had failed to recognize that it had mistakenly relied upon the wrong deed and, as a consequence, had neglected to serve him with the Conservatorship Petition or otherwise notify him regarding the attendant proceedings, in contravention of the Blight Act's requirements. *Id.* at 123a-24a. This left him in the dark until he realized what had transpired "upon a search of the public tax records in late April 2021." *Id.* at 126a. He maintained that the Borough's failure to provide him with notice prevented him from involving himself in the proceedings, seeking to terminate Bastogne's conservatorship, and retaining control of the Carman Property. *Id.* at 123a-25a. As

6

such, he requested that Common Pleas act pursuant to 42 Pa. C.S. § 5505 to "rescind [the] final orders"[3] that it had issued and, in addition, allow him to intervene in the matter *nunc pro tunc*, so that he could "avail himself of all the statutory remedies to terminate the conservatorship and retain his interest in the [Carman] Property." *Id.* at 126a-30a. Common Pleas elected not to hold oral argument regarding George Carman's Petition to Intervene and instead denied it outright on April 18, 2022, prompting him to appeal that ruling shortly thereafter.

## II. Discussion

On appeal,[4] George Carman asserts what amounts to a single argument, namely that Common Pleas erred and abused its discretion by denying his Petition to Intervene, because it is apparent on the face of the record that he was deprived of his interest in the Carman Property without being afforded legally adequate notice. George Carman's Br. at 9-18. We agree.

Section 4(d) of the Blight Act imposes the following notice-related duties upon any party who seeks the appointment of a conservator for an allegedly blighted property:

> (1) Upon filing the petition with the court, the petitioner shall notify the current owner of the property, all political subdivisions in which the property is located, all municipal

---

[3] Specifically, he sought rescission of the orders that granted the Conservatorship Petition and appointed Bastogne as conservator of the Carman Property, as well as those approving Bastogne's blight abatement plan, Sale Motion, and Motion to Terminate Conservatorship. *See* R.R. at 119a.

[4] Our standard of review regarding conservatorship petitions is limited to determining whether a court of common pleas abused its discretion or committed an error of law necessary to the outcome of the case. *In re Conservatorship Proceeding In Rem by Germantown Conservancy, Inc.*, 995 A.2d 451, 459 n.6 (Pa. Cmwlth. 2010). Similarly, we review a lower tribunal's disposition of a petition to intervene only for abuses of discretion or errors of law. *Wexford Sci. & Tech., LLC v. City of Pittsburgh Zoning Bd. of Adjustment*, 260 A.3d 316, 320 n.3 (Pa. Cmwlth. 2021).

authorities known to have provided service to the property and all lienholders of the filing by registered or certified mail to the last known address of each and by posting a copy of the notice on the building.

(2) In the event the registered or certified mail is returned with notation by the postal authorities that the recipient refused to accept the mail, the petitioner may mail a copy to the recipient at the same address by ordinary mail with the return address of the petitioner appearing thereon.

(3) Service by ordinary mail shall be presumed complete if the mail is not returned to the petitioner within 30 days after mailing.

(4) In the event that the registered or certified mail is returned with the notation by the postal authorities that it was unclaimed, the notice shall be personally served.

(5) In the event that the personal service is not able to be made after two such attempts, then the petitioner shall mail the petition to the recipient at the same address by ordinary mail with the return address of the petitioner appearing thereon with service by ordinary mail deemed complete if the mail is not returned to the petitioner within 15 days after the mailing.

(6) The petitioner shall also notify the owner and each lienholder of the hearing date and provide notice that the owner and lienholders may petition to intervene in the action.

68 P.S. § 1104(d).[5] Continuing on, Section 5 of the Blight Act provides additional guidance regarding adjudication of such a petition, providing, in relevant part:

(a) General rule.--The court shall act upon a petition submitted by holding a hearing within 60 days of receipt of the petition and by rendering a decision no later than 30 days after completion of the hearing.

---

[5] Section 3 of the Blight Act defines "Owner" as "[t]he holder or holders of title to, or of a legal or equitable interest in, a residential, commercial or industrial building. The term shall include an heir, assignee, trustee, beneficiary and lessee provided the ownership interest is a matter of public record." 68 P.S. § 1103. It also states that the phrase "Party in interest," as used in the Blight Act, includes "[t]he owner." *Id.*

8

(b) Intervention.--A party in interest may intervene in the proceeding and be heard with respect to the petition, the requested relief or any other matter which may come before the court in connection with the proceeding.

(c) Hearing.--At the hearing, any party in interest shall be permitted to present evidence to support or contest the petition, including, but not limited to, the schedule of encumbrances.

*Id.* § 1105(a)-(c).[6]

The Blight Act's intervention provisions dovetail with those of Pennsylvania Rule of Civil Procedure 2327, which pertinently states:

At any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein, subject to these rules if

. . . .

(4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa. R.Civ.P. 2327. A person who wishes to intervene must do so by petitioning the court:

(a) Application for leave to intervene shall be made by a petition in the form of and verified in the manner of a plaintiff's initial pleading in a civil action, setting forth the ground on which intervention is sought and a statement of

---

[6] Also of note are several other requirements imposed by the Blight Act. The conservator of a blighted property is obligated to create a final abatement plan, submit it for the court's consideration, and serve it upon "all parties to the action." Section 6(b)(3), (c)(2) of the Blight Act, 68 P.S. § 1106(b)(3), (c)(2). The court must then consider the final abatement plan at a hearing and allow "all parties" to appear and offer comments and critiques, which the court must "take . . . into consideration when assessing the feasibility of the plan and the proposed financing." *Id.* § 1106(c)(1)-(c)(5). Thereafter, the court may only grant the conservator's request to sell the property if it concludes, in relevant part, that "[n]otice and an opportunity to provide comment to the court was given to each record owner of the property and each lienholder." Section 9(b)-(b)(1) of the Blight Act, 68 P.S. § 1109(b)-(b)(1). Finally, the court may terminate the conservatorship only "[u]pon request of a party in interest or the conservator." Section 10 of the Blight Act, 68 P.S. § 1110.

the relief or the defense which the petitioner desires to demand or assert. The petitioner shall attach to the petition a copy of any pleading which the petitioner will file in the action if permitted to intervene or shall state in the petition that the petitioner adopts by reference in whole or in part certain named pleadings or parts of pleadings already filed in the action.

(b) A copy of the petition shall be served upon each party to the action.

Pa. R.Civ.P. 2328.

In most situations, the court must then hold a hearing in order to determine whether it is proper to allow intervention to occur. Pa. R.Civ.P. 2329.

> [A] petition to intervene cannot properly be denied without a hearing. *Phila*[*. Facs. Mgmt.*] *Corp. v. Beister*, . . . 408 A.2d 1095 ([Pa.] 1979); *Hayes v.* [*Sch. Dist.*] *of Pittsburgh*, . . . 381 A.2d 193 ([Pa. Cmwlth.] 1977). The reason for requiring a hearing is clear: to give the petitioner the opportunity to establish, factually, "that he comes within one of the four categories of persons who are entitled to intervene under Pa. [R.Civ.P.] 2327." *Hayes*; *see Philadelphia* [*Facs. Mgmt.*] *Corp.* However, the question of whether a person comes within one of those categories is irrelevant, if the action in which he seeks to intervene ceased to be pending prior to the filing of his petition. Pa. [R.Civ.P.] 2327 permits intervention only "during the pendency of an action." *Robinson* [*Twp. Sch. Dist.*] *v. Houghton*, . . . 128 A.2d 58 ([Pa.] 1956); *Groff v.* [*Twp.*] *of Ulster*, . . . 442 A.2d 1255 ([Pa. Cmwlth.] 1982). Therefore, if an action is no longer pending, a court [has] no power to permit intervention[,] and[] a hearing on the petition would be a futile exercise.

*Santangelo Hauling, Inc. v. Montgomery Cnty.*, 479 A.2d 88, 89 (Pa. Cmwlth. 1984). The general rule is thus that a court may permit intervention only in those cases which are still active.

In a similar vein, Section 5505 of the Judicial Code[7] "restricts the power of the courts to amend, modify[,] or vacate final orders to 30 days from the date the order is entered." *Ainsworth v. Dep't of Transp., Bureau of Driver Licensing*, 807 A.2d 933, 937 (Pa. Cmwlth. 2002). Once a court issues a final order in a given case, and the appeal window then closes without further challenge, that court lacks jurisdiction to revisit any of the decisions it had made in that matter. 42 Pa. C.S. § 5505. In other words, a final order, combined with the absence of a timely appeal, closes the metaphorical book on the overarching case.

These rules are not ironclad, however, as they "may be disregarded . . . if fraud or other equitable considerations require[] the granting of such relief." *Gasbarini's Est. v. Med. Ctr. of Beaver Cnty., Inc., Rochester Div.*, 409 A.2d 343, 345 (Pa. 1979); 42 Pa. C.S. § 5504 (the jurisdictional 30-day window may be extended in civil matters where necessary "to relieve fraud or its equivalent"). Such equitable considerations exist only where the "circumstance[s] [are] so grave or compelling as to constitute 'extraordinary cause' which justifies court intervention." *Lowery v. E. Pikeland Twp.*, 599 A.2d 271, 274 (Pa. Cmwlth. 1991); *accord M.J.M. Fin. Servs., Inc. v. Burgess by Dignazio*, 533 A.2d 1092, 1094 (Pa. Cmwlth. 1987) ("A [petition] to intervene after entry of a decree should be denied except in extraordinary circumstances.").

> "Extraordinary cause [or circumstances]" refers to an oversight or action on the part of the court or the judicial process which operates to deny the losing party knowledge of the entry of final judgment so that the commencement of the running of the appeal time is not known to the losing party.

---

[7] Per Section 5505 of the Judicial Code: "Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind any order within 30 days after its entry, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa. C.S. § 5505.

*Pendle Hill v. Zoning Hearing Bd. of Nether Providence Twp.*, 134 A.3d 1187, 1202 (Pa. Cmwlth. 2016) (quoting *Mfrs. & Traders Tr. Co. v. Greenville Gastroenterology, SC*, 108 A.3d 913, 919 (Pa. Super. 2015)). "[T]he extraordinary circumstances to be reviewed cannot pertain to the merits or the substantive defense the intervenor seeks to litigate. . . . Rather, it is the circumstances proffered to excuse the untimely filing that must be scrutinized." *Id.* at 1197 (internal citation omitted). Where such extraordinary circumstances are found to exist, a court may "rescind or modify its order beyond the generally applicable 30-day period." *Id.* at 1203.

In this instance, Common Pleas made several errors along the way to denying the Petition to Intervene. First, it concluded that there was no proof that "an oversight or action on the part of the court or judicial process" had deprived George Carman of notice regarding the conservatorship proceedings and, thus, that the requisite extraordinary circumstances did not exist. Common Pleas Order, 4/18/22, at 10-11. This is manifestly incorrect. As recounted above, the Borough did not serve George Carman with the Conservatorship Petition, or consider him to be a party in interest, despite the fact that *the evidence attached thereto* showed both that he was an owner of the Carman Property and that the deed proffered by the Borough was for a separate parcel of land. *See* R.R. at 15a-22a. This oversight was compounded by Common Pleas' failure to recognize the Borough's error. We agree with Common Pleas that it had no responsibility to "don[] a deerstalker hat when the initial [Conservatorship] Petition was filed to suss out whether the parties named therein were the correct parties to the action." *See* Common Pleas Order, 4/18/22, at 6. Indeed, as Common Pleas intimates through this reference, the lower tribunal was not required to act like one of English literature's most famous detectives when determining which individuals held an interest in the Carman Property. However, one need not possess

12

Holmesian powers of deductive reasoning, or his signature headgear, to figure out that the Conservatorship Petition's deed and title report *do not pertain to the same property*, or that George Carman was a joint owner of the Carman Property at the time of the Conservatorship Petition's filing. Second, Common Pleas maintained that "counsel's errors," insofar as they allegedly deprived George Carman of notice about the conservatorship proceedings, would not qualify under the law as extraordinary circumstances that would justify revisiting its rulings in this matter. *See id.* at 11. Common Pleas, however, did not identify the specific "counsel" to which it imputed those errors. *See id.* Regardless, our case law makes clear that only "[t]he mistake or neglect of the attorney for the party [who claims that extraordinary circumstances exist cannot constitute] sufficient ground[s] for relief." *Wise v. Borough of Cambridge Springs*, 104 A. 863, 864 (Pa. 1918) (quoting *Singer v. Del., Lackawanna & W. R.R. Co.*, 98 A. 1059, 1060 (Pa. 1916)); *accord Gasbarini's Est.*, 409 A.2d at 345. Given that George Carman was wholly uninvolved in this matter until he filed his Petition to Intervene, any of the "counsel's errors" to which Common Pleas may have been referring cannot constitute an impediment to the relief he now seeks. Finally, Common Pleas took issue with George Carman's desire "to undo the entire proceeding," apparently reasoning that even if extraordinary circumstances existed, they would only enable him to appeal Common Pleas' orders *nunc pro tunc*, or have Common Pleas reconsider its order terminating the conservatorship, rather than have Common Pleas revisit *all* of the rulings he wishes to challenge. *See id.* at 5-6. This is a fundamental misinterpretation of the law, for, as already noted, courts retain jurisdiction to "rescind or modify [a final] order beyond the generally applicable 30-day period" where extraordinary circumstances justify taking such action. *Pendle Hill*, 134 A.3d at 1202. To the extent that such

13

rescission or modification eliminates such an order's finality, it would open a path for a court to take a second look at any other order it issued in that matter. As we have explained in the past:

> A trial court possesses the inherent power to reconsider its own rulings. *D'Elia v. Folino*, 933 A.2d 117 (Pa. Super. 2007). Section 5505 of the Judicial Code, 42 Pa. C.S. § 5505, provides a court may modify or rescind any order within 30 days after its entry if no appeal from such order has been taken or allowed. However, this restriction pertains to final, appealable orders, not interlocutory orders. *Com*[.] *v. James*, 69 A.3d 180 (Pa. Super. 2013). Although a trial court's authority to amend a *final* order expires 30 days after its entry, a trial court may modify an *interlocutory* order after the expiration of 30 days. *Id.*; *Fernandez v. City of Pittsburgh*, 643 A.2d 1176 (Pa. Cmwlth. 1994) (trial court empowered to grant reconsideration of an interlocutory order at any time prior to its final disposition of the matter).
>
> "Where an order does not effectively place the litigant out of court or end the lawsuit, it is within the trial court's discretion to entertain a motion to reconsider the interlocutory order outside the 30-day time limit. . . ." *Hutchison v. Luddy*, 611 A.2d 1280, 1288 (Pa. Super. 1992).

*Mustafa v. Riscigno* (Pa. Cmwlth., No. 76 C.D. 2013, filed Dec. 19, 2013), slip op. at 8-9, 2013 WL 6730779, at *4 (emphasis in original).[8] Consequently, it is unmistakably evident that Common Pleas abused its discretion and committed errors of law when it denied George Carman's Petition to Intervene.

That having been said, we are not certain at this point that the Petition to Intervene must instead be granted. It is well settled that:

> [T]he [trial] court may deny intervention if, *inter alia*, "the petitioner has unduly delayed in making application for

---

[8] Unreported Commonwealth Court opinions issued after January 15, 2008, may be cited for their persuasive value. *See* Internal Operating Procedures of the Commonwealth Court Section 414(a), 210 Pa. Code § 69.414(a); Pa. R.A.P 126(b).

14

intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties." [Pa. R.Civ.P.] 2329(3); *Wilson v. State Farm Mut. Auto. Ins. Co.*, . . . 517 A.2d 944 ([Pa.] 1986). . . .

The question of the timeliness of a petition to intervene is one exclusively within the exercise of the trial court's discretion. *Templeton Appeal*, . . . 159 A.2d 725 ([Pa.] 1960).

*Chairge v. Exeter Borough Zoning Hearing Bd.*, 616 A.2d 1057, 1059 (Pa. Cmwlth. 1992). In this instance, George Carman admitted that he learned of the Carman Property's sale in April 2021, but did not file his Petition to Intervene until roughly six months later. *See* R.R. at 126a. This presents a factual issue regarding the timeliness of the Petition to Intervene, which must be resolved by Common Pleas. *See In re Rowan*, 763 A.2d 958, 961 (Pa. Cmwlth. 2000).

### III. Conclusion

In accordance with the foregoing analysis, we vacate Common Pleas' April 18, 2022 order and remand this matter to the lower tribunal, with instructions that it convene a hearing within 30 days, at which time the parties shall be afforded an opportunity to present evidence and testimony regarding the timeliness of George Carman's Petition to Intervene. Common Pleas shall then issue an order adjudicating the Petition to Intervene, in which it shall make sufficiently detailed factual findings and legal conclusions, including ones that address the aforementioned timeliness issue.[9]

_____
ELLEN CEISLER, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

[9] George Carman may use this opportunity to seek leave from Common Pleas to file an amended Petition to Intervene that satisfies the requirements imposed upon him by Pennsylvania Rule of Civil Procedure 2328.

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Brookhaven        :
                                    :
      v.                     :   No. 761 C.D. 2022
                                        :
Maria Carman and Bohdan Carman   :
                                      :
Appeal of: George John Carman    :

**O R D E R**

AND NOW, this 13th day of July, 2023, it is hereby ORDERED that the Court of Common Pleas of Delaware County's (Common Pleas) April 18, 2022 order is VACATED. It is FURTHER ORDERED that this matter is REMANDED to Common Pleas, with instructions that it convene an evidentiary hearing within 30 days, at which time it shall consider the timeliness of Appellant George John Carman's Petition to Intervene, and after which time it shall issue an order adjudicating the Petition to Intervene, complete with sufficiently detailed factual findings and legal conclusions.

Jurisdiction relinquished.

_____
ELLEN CEISLER, Judge